## Stuyvesant Insurance Company *v.* Keystate Insurance Agency, Inc., Appellant.

Argued November 12, 1965. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*George E. Beechwood,* with him *Beechwood & Lovitt,* for appellant.

*Charles A. Kerlavage,* with him *William P. Manning, Jr.,* and *Wright, Spencer, Manning & Sagendorph,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, March 22, 1966:

On October 31, 1961, appellee, The Stuyvesant Insurance Company (Stuyvesant), filed a complaint in equity against appellant, Keystate Insurance Agency, Inc. (Keystate), alleging that appellant, its former agent, had breached the agreements between the parties relative to premiums remitted and by failure to report losses, dailies or issued policies. Appellee alleged that appellant was a trustee of certain funds to which appellee was entitled and requested a complete accounting. Appellee also requested that the court compel appellant "to report and account finally and fully to plaintiff . . . to the extent that same have not yet been finally and fully accounted for, including in said account an accurate statement of all premiums or other moneys collected and not remitted to plaintiff . . . to deliver to plaintiff all records of expirations on business accepted by plaintiff . . . to report to plaintiff notice of all claims in connection with policies issued." The complaint also named the principal officers and stockholders of Keystate, individually, as defendants.

These individual defendants filed preliminary objections in the nature of a demurrer. The court below, by an order dated February 8, 1962, sustained the preliminary objections and the complaint, as to the individual defendants, was dismissed without leave to amend. In the same order, other preliminary objections filed by the corporate defendant, Keystate, were dismissed, and it was ordered to answer the complaint within twenty days. Appellant's answer denied that it was in possession of any money or trust funds of appellee, and by way of counterclaim, asserted that appellee had wrongfully terminated its written agreements with appellant, was tortiously interfering with appellant's business and was retaining money belonging to appellant.

Appellee, in reply to the counterclaim, alleged that its agency agreement with appellant was terminated for good cause and denied that any money was due appellant or that trade libels or slanders were committed against appellant. Eight full days of hearings before the chancellor produced a voluminous record consisting of 1164 pages of testimony and 777 pages of exhibits. On this record, the chancellor made his adjudication, resolving all issues in favor of appellee. He held that appellee was justified in terminating the agency agreement, and that it was entitled to a money judgment for $197,699.70, together with costs and interest thereon from August 31, 1961.

Appellant filed exceptions to the chancellor's adjudication, which were overruled by the court en banc. The decree nisi was entered as the final decree and this appeal followed.

Appellant contends that equity does not have jurisdiction in that appellee had a full, complete and adequate remedy at law. It is well settled in Pennsylvania that a suit in equity will not lie where a plain, adequate and complete remedy at law may be had. *Meehan*

*v. Cheltenham Twp.,* 410 Pa. 446, 189 A. 2d 593 (1963). Appellant's brief correctly states that "Equity takes jurisdiction only when the accounts are mutual or complicated or when discovery is needed and is material to the relief. Ebbert v. Plymouth Oil Co., 348 Pa. 129 (1943)." This conclusion from *Ebbert v. Plymouth Oil Co.,* supra, was based upon three cases, the most recent being *Williams v. Finlaw, Mueller & Co.,* 292 Pa. 244, 141 A. 47 (1928). In that case, we said: "But where the matter to be determined involves the accounts of different parties, to which debit and credit items attach and are intermingled, it can generally be held that a jury would not be qualified to state such an account. We might even go farther and say that equity will entertain jurisdiction where it is doubtful whether adequate relief could be had at law: Southampton Dock Co. v. Southampton, etc., Board, L.R. 11 Eq. 254, 269. . . . But where the principal has reposed confidence in his agent, and the matters for which an accounting is sought are peculiarly within the knowledge of the latter, equity will assume jurisdiction: [citing cases]." In the instant case, the working relationship of the parties necessarily imposed a trustee's obligation on the agent to account to the principal for money collected. That the accounts were complicated is indicated by the fact that the chancellor appointed Main LaFrentz & Co., under Pa. R. C. P. 1515, to study the accounting issues, examine the books and accounts of both parties, and to submit to the chancellor a report of its findings. The manager of this firm devoted approximately 500 hours to this assignment and, in addition, a resident partner in the firm spent 50 to 100 hours on it. These circumstances enable us to reach the conclusion that this was a very complicated account, and one in which a jury would have extreme difficulty in reaching a fair conclusion. On this basis, and under the doctrine set forth in *Williams v. Finlaw,*

*Mueller & Co.*, supra, the chancellor reached the correct decision in holding that equity had jurisdiction in the instant case.

Appellant also contends that it, in fact, did not breach its agreements with appellee, that appellee wrongfully terminated its insurance agreements with appellant in failing to give required 30 days written notice. Appellant further contends that the chancellor erred in his finding of fact No. 20, which reads as follows: "Defendant's accounting records indicate plaintiff's accounts current were paid late for the months of February and April 1961. The May 1961 and subsequent accounts current remain unpaid and overdue, except to the extent plaintiff was able to partially collect amounts receivable from defendant's sub-brokers." Under the contract with appellee, appellant was obligated to tender the monthly payment 87 days after the end of the month for which the account was rendered. The chancellor's finding of fact No. 19 finds that the plaintiff terminated the agency agreement on August 24, 1961. Under the contract, the monthly payment for May would not be due until the 26th day of August. The chancellor's finding of fact No. 20 indicates the May account remained unpaid and overdue. The chancellor may have meant this to mean on the 24th of August, but also it could mean at the time he rendered his adjudication, a more probable inference in view of the full text of the finding.

Assuming arguendo that finding of fact No. 20 is incorrect, appellant's position relative to the allegedly improper cancellation remains untenable, since the chancellor found various other reasons for the appellee to terminate the agency agreement. He states in his opinion the following: "Accordingly, defendant's failure to report notices of claims, to cancel policies when requested, to send to plaintiff the home office copies of issued policies, to pay its accounts when due,

and to follow reasonable instructions, gave plaintiff legally sufficient cause to terminate its agency agreement without compliance to the notice provision. Where an agent of an insurance company, in violation of his contract, neglects his employer's work, fails to make returns, or keep proper accounts, he may be dismissed. Standard Life Insurance Co. v. Carey, 282 Pa. 598 (1925). '. . . An insurance agency contract is cancellable for cause, in any event, where the cause is action inimical to the insurer. . . .' Cohen v. Mutual Benefit Health & Accident Association, 174 Pa. Superior Ct. 630 (1953)."

We stated in *Swank v. Amp*, 411 Pa. 356, 192 A. 2d 225 (1963) : " '(1) the findings of a chancellor have the effect of a verdict of a jury and, when affirmed by the court en banc, will not be reversed if there is adequate evidence to sustain them and if they are not premised upon erroneous inferences and deductions drawn from the evidence: [citing cases] ; (2) on appeal from an equity decree the question is not whether the appellate court, upon the same evidence, would have reached the same conclusion, but whether the evidence is sufficient to support the conclusion reached by the chancellor who had the opportunity to see and hear the witnesses: [citing cases].' "

Viewing the instant case in this light, we find that the evidence supports the facts found by the chancellor, and that these facts are more than sufficient to support his conclusions.

Appellant further contends that the contract did not make appellant liable as a fiduciary for premiums paid and not received, and that the lower court erred in permitting appellee to collect premiums from appellant's brokers, sub-brokers, and insureds, in addition, to permitting appellee to recover from appellant the very same premiums already collected by appellee.

These contentions are not supported by the record. The report of the court-appointed accountants was the subject of cross-examination and was unimpeached. The chancellor and the court en banc accepted the report and, finding it to be supported by the evidence, we also accept it.

In view of the result reached, we find it unnecessary to discuss or decide appellee's motion to suppress appellant's printed record, or, in the alternative, dismiss the appeal.

Decree affirmed, costs to be borne by appellant.