535 A.2d 1168

**George K. MOY and Carol Rosen Moy, His wife On Behalf of Themselves and all Others Similarly Situated, Appellants,**

v.

**SCHREIBER DEED SECURITY CO., A Pennsylvania Corporation, and Marvin Schreiber, An Individual, Appellees.**

Superior Court of Pennsylvania.

Argued Nov. 17, 1987.

Filed Jan. 15, 1988.

Barbara Cymerman, Pittsburgh, for appellants.

James A. Buddie, Pittsburgh, for Schreiber, appellee.

Before WIEAND, MONTEMURO and POPOVICH, JJ.

MONTEMURO, Judge:

This appeal concerns a class action which was originally filed on February 3, 1987, by the appellants, George K. Moy and Carol Rosen Moy. Appellants named as defendants the Schreiber Deed Security Co. (S.D.S.C.), a Pennsylvania corporation, and Marvin Schreiber, president of S.D.S.C. In their complaint, appellants averred that S.D.S.C. had charged them the following fees in conjunction with a residential house closing:

1101. Settlement or closing fee to Chreiber [sic] Deed Security Company ... $50.00

1108. Title insurance to Chreiber [sic] Deed Security Company ... $633.00

1112. Disbursement Char Chreiber [sic] Deed Security Company ... $10.00

R.R. at 5a. Appellants averred that the ten ($10.00) dollar disbursement fee had not been included in the estimate of their closing costs. R.R. at 6a. Appellants further averred that S.D.S.C. had violated a provision of the Title Insurance Companies Act, 40 Pa.S.A. § 910-1(5), by charging a settlement fee and a disbursement fee in addition to a flat fee for title insurance.[1] Appellants also asserted a cause of action under The Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa.S.A. § 201-1 to 201-9.2, on the grounds that S.D.S.C.'s policy of charging purchasers of title insurance a settlement fee and a disbursement fee was violative of the Title Insurance Companies Act and the Unfair Insurance Practices Act[2] and was, therefore, an unfair and deceptive trade practice.[3] R.R. at 12a.

Appellants' complaint contained the following averment:

1. 40 Pa.S.A. § 910-1(5) is a provision contained in the definitional section of the Title Insurance Companies Act which provides as follows:

   "Fee" for title insurance means and includes the premium, the examination and settlement or closing fees, and every other charge, whether denominated premium or otherwise, made by a title insurance company, agent of the title insurance company or an approved attorney of a title insurance company, or any of them, to an insured or to an applicant for insurance, for any policy or contract for the issuance of, or an application for any class or kind of, title insurance; but the term "fee" shall not include any charges paid by an insured or by an applicant for insurance, for any policy or contract, to an attorney at law acting as an independent contractor and retained by such attorney at law, whether or not he is acting as an agent of or an approved attorney of a title insurance company, or any charges made for special services not constituting title insurance, even though performed in connection with a title insurance policy or contract.

2. 40 Pa.S.A. § 1171.1 to 1171.15.

3. The Title Insurance Companies Act specifically provides that the business of title insurance is subject to the provisions of the Unfair Insurance Practices Act. 40 Pa.S.A. § 910-54 (10). Although we express no opinion on the merits of this case before us, we do note that this court has recently determined that the Unfair Insurance Practices Act does not "represent the sole and exclusive source of statutory redress of alleged unfair or deceptive acts of insurers and their agents. Specifically, these acts may be redressed in the courts of

4. Marvin Schreiber acted on his own behalf and as President or other corporate officer of Schreiber Deed Security Co.

Trial Court Op. at 1. Appellee, Marvin Schreiber, filed preliminary objections seeking a dismissal of the complaint as to him. Thereafter, on April 7, 1987, the appellants exercised their right to file an amended complaint pursuant to Pa.R.C.P. 1028(c).[4] The only change contained in the amended complaint was in paragraph four (cited above) of the complaint:

4. At all times material hereto, Defendant Marvin Schreiber acted on his own behalf and as President or other corporate officer of Schreiber Deed Security Co., in actively participating in the wrongful injury producing conduct, by setting policies and/or charges and/or fees complained of by plaintiffs as hereinafter set forth.

Trial Court Op. at 2. On April 15, 1987, appellee filed preliminary objections to appellant's amended complaint for failure to comply with Pa.R.C.P. 1019(a) and for failure to state a cause of action. The trial court entered an order on May 8, 1987 sustaining the preliminary objections without leave to amend.

The issue which we must determine in the instant case is whether the trial court erred in determining that appellants have failed to state a cause of action against the appellee, a corporate officer, in his personal capacity.[5] Initially, we note the language of our supreme court in *Gekas v. Shapp*, 469 Pa. 1, 5–6, 364 A.2d 691, 693 (1976):

our Commonwealth under the Unfair Trade Practices and Consumer Protection Law as well as by administrative hearing under the Unfair Insurance Practices Act." *Hardy v. Pennock Insurance Agency, Inc.,* 365 Pa.Super. 206, 221, 529 A.2d 471, 479 (1987). *See also Pekular v. Eich,* 355 Pa.Super. 276, 513 A.2d 427 (1986).

4. Pa.R.C.P. 1028(c) provides in pertinent part that "[a] party may file an amended pleading as of course within the (10) days after service of a copy of preliminary objections ..."

5. Based upon our disposition of appellants' first issue, it is unnecessary for us to address appellant's contention that the trial court erred in dismissing appellants' amended complaint without leave to amend.

A demurrer admits every well-pleaded material fact set forth in the pleadings to which it is addressed as well as all inferences reasonably deductible therefrom, but not conclusions of law. *Buchanan vs. Brentwood Federal Savings and Loan Association,* 457 Pa. 135, 320 A.2d 117 (1974); *Borden v. Baldwin,* 444 Pa. 577, 281 A.2d 892 (1971); *Papieves v. Lawrence,* 437 Pa. 373, 263 A.2d 118 (1970). In order to sustain the demurrer, it is essential that plaintiff's complaint indicate on its face that his claim cannot be sustained, and the law will not permit recovery. *Hoffman v. Misericordia Hospital of Philadelphia,* 439 Pa. 501, 267 A.2d 867 (1970); *Papieves v. Lawrence, supra; Schott v. Westinghouse Electric Corp.,* 436 Pa. 279, 259 A.2d 443 (1969). If there is any doubt, this should be resolved in favor of overruling the demurrer. . . .

In *Wicks v. Milzoco Builders, Inc.,* 503 Pa. 614, 470 A.2d 86 (1983), the Pennsylvania Supreme Court held that a cause of action had been stated against three corporate officers on the theory that they personally participated in alleged tortious acts committed by two corporations.[6]  In *Wicks,* the appellants had purchased a home in a development known as Monroe Acres.  Appellants sought to recover damages for personal injuries and property damage they claimed resulted from serious water drainage problems in Monroe Acres.  Appellants alleged in their complaint that the corporate officers had been negligent in failing to foresee the potential drainage problems at Monroe Acres and in failing to provide adequate drainage ditches.  The Supreme Court in *Wicks* discussed the participation theory of corporate officer liability as follows:

The general, if not universal, rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor;  but that an officer of a corporation who takes no part in the commis-

6.  In *Wicks v. Milzoco Builders, Inc.,* 503 Pa. 614, 470 A.2d 86 (1983), the trial court had sustained appellees' demurrers, holding that no cause of action had been stated against the corporate officers in their personal capacities.  This court affirmed the dismissal.

sion of the tort committed by the corporation is not personally liable to third persons for such a tort, nor for the acts of other agents, officers or employees of the corporation in committing it, unless he specifically directed the particular act to be done or participated, or cooperated therein ... Liability under this theory attaches only where the corporate officer is an actor who participates in the wrongful acts. Therefore, corporate officers may be held liable for misfeasance ... Nevertheless, corporate officers and directors may not be liable for mere nonfeasance.

*Wicks, supra,* 503 Pa. at 621–622, 470 A.2d at 90 (citations omitted). In *Wicks,* the court determined that the complaint was sufficient to withstand a demurrer, because it averred in general terms that the corporate officers knew that the terrain of Monroe Acres would lead to drainage problems and that they had allowed the home construction and sale to proceed despite this knowledge. "Under Pa.R. C.P. 1019(a) the plaintiff need only plead ultimate facts; evidentiary facts need not be set forth in the complaint ... This complaint, while bare of evidentiary facts, when read as a whole, does state *ultimate facts* on which the appellants depend to show Miller, Cook and Zollers' liability, in the most general terms." *Id.* (citations omitted) (emphasis added).

We find that the instant case is indistinguishable from *Wicks* and therefore, we reverse the trial court's order sustaining appellee's preliminary objections. Based upon our reading of the trial court's opinion in this case, it appears that the trial court believed that appellants had failed to state a cause of action because appellants had not pleaded more specific facts concerning the participation of the appellee in the injury-producing conduct. Trial Court Op. at 3–4. We do not agree. The injury-producing conduct in this case consisted of a company policy of charging a settlement fee and a disbursement fee when selling a policy of title insurance. Although appellants did not include facts concerning the time, place, or manner in which

the appellee allegedly established this company policy, the appellants did allege the ultimate fact that appellee set this fee policy himself. As a result, appellants should not have been put out of court.[7] In reaching our conclusion in this case, we are cognizant of the strict standard that has been established for sustaining a demurrer.

The law of Pennsylvania has long recognized that a corporate officer who participates in wrongful, injury-producing conduct can be personally liable. *Chester–Cambridge Bank & Trust Co. v. Rhodes*, 346 Pa. 427, 31 A.2d 128 (1943); *Amabile v. Auto Kleen Car Wash*, 249 Pa.Super. 240, 376 A.2d 247 (1977). *See also Shonberger v. Oswell*, 365 Pa.Super. 481, 530 A.2d 112 (1987); *Bank of Landisburg v. Burruss*, 362 Pa.Super. 317, 524 A.2d 896 (1987). In *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602 (3d Cir.1978), the court recognized that a corporate president could be held individually liable under the participation theory for acts of unfair competition which he personally committed. If there is positive proof that the appellee in the case at bar has personally engaged in conduct which constitutes an unfair and deceptive trade practice, it is possible that he may properly be held liable for his actions under the Unfair Trade Practices and Consumer Protection Law. *See Kaites v. Dept. of Environmental Resources*, 108 Pa.Commw. 267, 529 A.2d 1148 (1987) (Public interest requires specific evidence of acts of intentional neglect or misconduct before imposing individual liability on corporate officer for abating a public nuisance under The Clean Streams Law or the Coal Refuse Disposal Control Act.)[8]

7. We note that it may be that a summary judgment may become appropriate later in the instant case if undisputed facts establish that the appellees did *not* participate in setting the alleged unfair fee policy of this corporation. *Wicks, supra*, 503 Pa. at 623, 470 A.2d at 91 (1983).

8. We emphasize that we express no opinion on the merits of the instant case. However, as with the claim asserted against the appellee under the Unfair Trade Practices and Consumer Protection Act, it may be that, upon proper proof of participation, appellants may be able to hold the appellee liable under the Title Insurance Companies Act. This is assuming, of course, that the Title Insurance Companies Act provides grounds for such a cause of action.

Accordingly, we reverse the order of the trial court and remand for further proceedings. Panel jurisdiction is relinquished, jurisdiction of the court is retained.